REID, Judge.
These four consolidated cases were brought by Charles H. Christmas, Quinton J. Fairburn, Luther W. Fairburn, individually and as Administrator of the estate of his minor child, Shirley Fairburn, and Albert Alton Lebo against Virgil Travis and his insurer, the Southern Farm Bureau Casualty Insurance Company, for damages resulting from an automobile accident involving a Ford pickup truck owned and operated by Albert Alton Lebo and an International Scout owned and operated by Virgil Travis. An International Scout is similar in size and structure to a Jeep.
The accident happened on November 21, 1961 at about 10:45 A.M., on Louisiana Highway 440, some five and one-half miles east of the Town of Tangipahoa. At this point the highway is a two-lane black topped road which runs generally east and west through open rural country.
In essence, the negligent acts of the defendant, Virgil Travis, as set out by the appellants, are as follows:
“1. Failure to keep the proper look out.
“2. Failure to keep the vehicle he was driving under proper control.
“3. Exceeding the lawful, prudent speed limit.
*181 ■“4. Driving his vehicle in the wrong traffic lane of the highway.
“5. Veering to the left while the Lebo vehicle was in the act of passing him.
“6. Driving negligently, time and place considered.”
The defendants denied any negligence on the part of Virgil Travis, and, in the alternative, alleged contributory negligence on the part of Albert Alton Lebo in operating his vehicle in an improper manner and further alleging the contributory negligence of the other plaintiffs in failing to warn of the impending danger of the collision.
The New Hampshire Insurance Company, insurer of the Crowson Equipment Company, employer of plaintiff Charles Christmas, intervened seeking a judgment to recover workman’s compensation paid to Charles Christmas.
The Judge of the Lower Court, with written reasons, rendered a judgment in favor of the defendants in all four cases, rejecting plaintiffs’ demands and dismissing each suit at plaintiff’s cost.
From this judgment the four plaintiffs appealed.
The facts show conclusively that both vehicles wre traveling east on Highway 440. The Scout, driven by Virgil Travis, was in the lead, and, as it approached the top of a hill, where there was a curve to the right, the Lebo truck attempted to pass the Travis vehicle, when the left wheels of the pickup truck left the paved surface of the highway and went on to the shoulder. At this point Lebo lost control of his pickup truck, when he turned sharply to his right to maneuver his truck back on the highway, and struck the left rear of the Scout while the Scout was traveling in its proper lane of traffic.
Charles Christmas and Willie White, a feeble-minded colored man, were guest passengers in the Travis vehicle, and Quinton Fairburn and his young cousin, Shirley Fairburn, were guest passengers in the Lebo truck.
The main issue in this case is whether there was actionable negligence on the part of the defendant, Virgil Travis.
All of the occupants of each vehicle testified in the case, as well as the State Trooper who investigated the accident. We will briefly review the testimony of each one.
Plaintiff Lebo testified at the time of the accident he was traveling between 35 and 45 miles an hour. Mr. Lebo had lost the sight of his left eye some twenty years before. He swore that Mr. Travis veered across the middle stripe of the highway into the left lane of traffic whereupon Lebo turned to his left onto the narrow gravel shoulder to avoid a collision. Lebo then turned his vehicle back to the right, driving across the highway, where the right front fender of his truck hit the left rear fender of the Travis vehicle. Both cars overturned, and all occupants were injured.
Mr. Quinton Fairburn’s testimony was similar to Mr. Lebo’s, to the effect that Mr. Travis caused the accident by veering to the left over the center line causing Mr. Lebo in turn to pull to the left on to-the shoulder, where he lost control of his car as he pulled back on the highway and struck the Travis vehicle.
The seven year old Fairburn girl testified, however, we do not feel that she added anything to the testimony in the case. While her direct testimony was in line with the other plaintiffs, she did not remember details when she was placed on cross examination.
The appellants placed great stress on the testimony of the feeble minded negro man, Willie White, who was riding as a guest passenger in the rear of the Travis vehicle. He testified he was facing to the rear, or west, and he saw the pickup truck approaching at a speed he estimated at 100 miles an hour. He testified he first called to Mr. Travis, “There’s a black pickup behind *182 us,” and a second time, when the pickup truck started to pass, he shouted “Look out, here she comes.”
Appellants claim, after these warnings, Mr. Travis should have pulled farther to the right, or, at least should have glanced back to see how close the pickup truck was to his vehicle and taken the proper steps to avoid the accident. Mr. Travis swore that he heard only the last exclamation, “Look out, here she comes,” which was seconds before the accident actually happened. Willie White further testified that the reason he was worried was because of the great speed of the pickup truck that was approaching and the fact that he was going to try to pass the Travis Scout. He testified the accident was caused by the Lebo truck veering off the highway on to the shoulder of the road, where the driver lost control of it. It was brought out on the trial of the case that Willie White had been adjudged incompetent and placed under the curatorship of Mrs. Virgil Travis some time previous to the accident. His testimony amply justifies the conclusion as to his incompetency, and the Trial Judge was correct in failing to give credence to his testimony.
Mr. Christmas was in a different category than the other plaintiffs and he raises the additional issue “did the host driver act as a reasonable prudent man after hearing the warning of his employee that a truck was trying to pass him?” Mr. Christmas testified that prior to the collision he and Mr. Travis were discussing business when suddenly the vehicle was hit on the side by the Lebo truck. Mr. Christmas did not see the accident and was rendered unconscious immediately following the collision. He admitted he told Mr. Travis, Mrs. Travis, the State Trooper and the Insurance Adjuster that Mr. Travis was in his proper lane of traffic, and that he would like to see Mr. Lebo try to recover damages against Mr. Travis. However, when his suit was filed, he alleged the accident was caused by the negligence of Mr. Travis in veering to the opposite lane of traffic, causing the Lebo truck to pull off the highway on to the shoulder where the driver lost control of the truck. He further testified that, upon thinking the matter over some four and one-half months after the accident, he came to the conclusion that perhaps Mr. Travis was at fault and could have avoided the accident had he been traveling at a slower rate of speed. The Trial Judge did not give credence to his testimony as to the cause of the accident.
Mr. Virgil Travis testified he was driving the Scout, talking to Mr. Christmas, who had remarked how nice it was to have someone else chauffeur him. He did not see the accident and did not see Lebo trying to pass him. He testified he was in the right lane of traffic at all times, and the accident happened in his lane of traffic.
Appellants contend the Judge of the Lower Court should have accepted the four plaintiffs’ testimony, together with that of Willie White, in preference to that of Mr. Travis, because the number of plaintiffs’ witnesses exceeded defendants’ witnesses, four against one. The Trial Judge is eminently correct in choosing to believe one witness, thereby rejecting the testimony of others, if he is satisfied this witness is telling the truth, and he is not satisfied that the story of the other witnesses is either truthful or corroborated by the other facts and circumstances of the accident.
There seems to be no dispute that Mr. Travis was traveling at about 55 miles an hour. Mr. Bullock, a State Trooper, testified to a sharp curve at the top of the hill which is verified by photographs introduced in evidence. We are of the opinion that Mr. Lebo was negligent in attempting to pass a car traveling 55 miles an hour, approaching a rather sharp curve, and his negligence was the cause of the accident. While he testified he was driving 35 to 45 miles an hour it is apparent he was in error, and was traveling in excess of 55 miles an hour when he attempted to pass Mr. Travis for at the rate of speed to which *183 he testified he would have been to the rear of Mr. Travis’ vehicle when he turned back on the highway and lost control of his truck. State Trooper Bullock testified, after talking with the witnesses and looking over the scene of the accident, he came to the conclusion the accident was caused by Mr. Lebo driving off the black top road on to the shoulder of the road, losing control of his truck and pulling back into the highway, striking the Travis vehicle in the left rear.
We are, therefore, of the opinion that the judgment of the Lower Court in all four cases is correct and should be affirmed.
Affirmed.